IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| FREDDIE J. WELLS, ) | |
| ) | C/A No. 4:05-2321-HMH-TER |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| THE SOUTH CAROLINA ) | |
| DEPARTMENT OF CORRECTIONS; ) | |
| ANTHONY PADULA, WARDEN OF ) | |
| LEE C.I. AND WILLIE L. EAGLETON, ) | |
| WARDEN OF EVANS C.I., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## I. PROCEDURAL BACKGROUND

The plaintiff, Freddie J. Wells ("plaintiff/Wells"), filed this action under 42 U.S.C. § 1983[1] on August 31, 2005. At all times relevant to the allegations in the plaintiff's complaint, he was an inmate with the South Carolina Department of Corrections ("SCDC"). Plaintiff alleges that his constitutional rights were violated when defendants denied him access to the courts which caused him to file an untimely Notice of Appeal in a previous action, leading to the dismissal of that Petition.

On June 28, 2006, the defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and an alternative motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure along with a memorandum in support of that motion.

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

(Doc. #15). On January 10, 2007, the Honorable Henry M. Herlong, Jr., United States District Judge, entered an Order denying defendants' motion for summary judgment based on collateral estoppel.

Defendants filed a motion for summary judgment on March 2, 2007.[2] Because the plaintiff is proceeding pro se, he was advised on or about March 5, 2007, Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint. The plaintiff filed a response in opposition on March 26, 2007.

## II.  DISCUSSION

### A.  FACTUAL/PROCEDURAL ALLEGATIONS

As stated above, plaintiff filed this action alleging violations of his constitutional rights with relation to his previous habeas corpus case. On October 25, 2002, plaintiff pleaded guilty before the Florence County Court of General Sessions on a charge of "Felony DUI resulting in Death." Plaintiff was sentenced to five years' imprisonment. While incarcerated, plaintiff filed a petition seeking habeas corpus relief pursuant to 28 U.S.C. §2254, C/A No. 4:04-22358-20BH. The undersigned issued a report and recommendation recommending that the petition be dismissed without prejudice and without issuance and service of process. Plaintiff filed objections to the report and recommendation with the district judge. On November 18, 2006, the Honorable Henry M. Herlong,

---

[2] The undersigned is aware that this motion for summary judgment was filed outside of the deadlines as set forth in the court's scheduling order. However, given the court's review of the dispositive motion and based on judicial economy, the motion is considered on the merits.

2

Jr., ordered that the petition be dismissed in that petitioner failed to meet his burden of proving he had exhausted his state court remedies and the petition was dismissed *without prejudice*. Wells did not file a Notice of Appeal with the Fourth Circuit Court of Appeals until January 26, 2005. On April 4, 2005, the United States Court of Appeals for the Fourth Circuit dismissed the appeal for lack of jurisdiction because the notice of appeal was not timely filed. Plaintiff filed a petition for rehearing asserting that he was denied access to courts while at Evans Correctional Institution ("ECI") due to the lockdown causing him to file an untimely appeal in case number 04-22358/No. 05-6148, to the United States Court of Appeals for the Fourth Circuit. Plaintiff argued that the notice of appeal was not timely due to circumstances beyond his control and the delay should be waived due to the circumstances. The motion for re-hearing was denied by the Fourth Circuit on May 20, 2005. Plaintiff then filed motions for clarification on the denial of the petition for rehearing which were denied on January 31, 2006.

Plaintiff alleges in his complaint that he was denied access to courts while at Evans Correctional Institution due to not being allowed to get his legal mail in and out as a result of the lockdown of the prison causing him to file an untimely appeal in case number 04-22358/No. 05-6148, to the United States Court of Appeals for the Fourth Circuit. Plaintiff also alleges that he has had untimely deliverance of legal mail and problems getting postage upon his arrival at Lee Correctional Institution but does not allege any actual injury as a result of the alleged delay.

### B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v.

Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

**C.  ARGUMENT OF THE PARTIES**

**1.   ACCESS TO COURTS**

Defendants argue that, even if plaintiff was denied the ability to file a timely Notice of Appeal, such denial caused him no actual injury or prejudice capable of stating a cognizable Constitutional deprivation since he could have refiled his case either in State or Federal Court at any time.

The critical issue that must be analyzed to resolve the claims in this case is whether or not the plaintiff has been denied meaningful access to courts and is able to show actual injury as a result of the denial alleged.  Prisoners do not have a cause of action under § 1983 for negligent interference by prison officials with their right of access to the courts.  (Pink v. Lester, 52 F.3d 73 (4th Cir. 1995), "negligent denial of access to the courts is not actionable under § 1983." ) A prisoner must allege adverse consequence as a basis for allegations that the delay or non delivery deprived him of meaningful access to the courts.  White v. White, 886 F.2d 721 (4th Cir. 1989) and Morgan v. Montanye, 516 F.2d 1367 (2d Cir. 1975 ) cert. denied, 424 U.S. 973 (1976).   Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim. Lewis v. Casey, 518 U.S.343 (1996).

As previously stated, plaintiff argues that he was denied access to courts when Evans Correctional Institution was placed on lock down for three months and he was not able to timely file an appeal to Judge Herlong's order in case number 4:04-cv-22358-HMH. However, a review of Judge Herlong's order reveals that it was dismissed without prejudice as plaintiff failed to prove that he had exhausted his state court remedies. Therefore, plaintiff could have re-filed his habeas petition and shown that he had exhausted his state court remedies if he had done so at that time. Thus,

plaintiff has failed to show that he suffered any actual injury.[3] Additionally, plaintiff has not shown any actual injury as a result of his allegations with respect to mail and postage at Lee Correctional Institution.

Based on the above, the undersigned finds that the plaintiff's constitutional rights have not been violated. Thus, the undersigned recommends that summary judgment be granted on this issue in favor of the defendants.

## 2. ELEVENTH AMENDMENT IMMUNITY

Defendants argue the South Carolina Department of Corrections ("SCDC") and Wardens Eagleton and Padula are entitled to Eleventh Amendment Immunity in their official capacities. Defendants argue the state of South Carolina is not a person for purposes of 42 U.S.C. §1983 and Wardens Padula and Eagleton are sued in their official capacity as Wardens of their respective prisons. Further, defendants assert that plaintiff makes no allegations against either defendant individually and there is no evidence on the record that either defendant was personally involved in any alleged constitutional deprivation to plaintiff.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may

---

[3] Furthermore, as long as lockdown prisoners are the product of prison regulations reasonably related to legitimate penological interests, such delays are not of constitutional significance, even where they result in actual injury. Lewis v. Casey, 518 U.S. at 362.

be granted, damages may not be awarded against the state.

In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. <u>Will</u>, <u>supra</u> at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that the defendants were employees of the SCDC and, thus, state officials acting in their official capacity while employed by the SCDC. Therefore, they are entitled to Eleventh Amendment immunity from monetary damages.

### 3. QUALIFIED IMMUNITY

Defendants argue that Wardens Padula and Eagleton are entitled to qualified immunity under <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982).

Although the burden of showing immunity remains on the defendants, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit.  Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it.  The defendants argue that they are entitled to qualified immunity in their individual capacity.

The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  <u>Harlow</u>, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official

8

>must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1985).

In Torchinsky v. Siwinski, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals explained the rationale for Harlow qualified immunity:

>The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Torchinsky, 942 F.2d at 260-261. (Citations Omitted).

The Torchinsky court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." The Torchinsky court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." Torchinsky, 942 F. 2d at 261, citing Sevigny v. Dicksey, 846 F. 2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. Torchinsky, 942 F. 2d at 261, citing Collinson v. Gott, 895 F. 2d 994 (4th Cir. 1990). As the Fourth Circuit explained in the case of

9

Swanson v. Powers, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so with respect to defendant Padula.[4] The undersigned cannot conclude that defendant Padula "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra. Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity as to

---

[4] Plaintiff does not assert any specific allegations in his complaint as to Anthony Padula, Warden at Lee Correctional Institution.

defendant Padula.

The main allegations in plaintiff's complaint pertain to the time period he was on lockdown at Evans Correctional Institution. In the complaint, plaintiff asserts that "Mr. Eagleton, the Warden at Evans was notified about my appeal on an 'inmate to staff' [form] and his response was that I should contact Mr. Bundy, the postmaster concerning this issue at Evans Correctional Mail Room." In his response to the motion for summary judgment, plaintiff argues that Evans was placed on lockdown and the "Ready Response Team of SCDC assumed the security responsibility for day to day operations" with defendant Eagleton as the "overseer" of the entire operation. Plaintiff also asserted that he made complaints and filed grievances to Associate Wardens and Warden Eagleton at Evans Correctional Institution, completed "Inmate Requests to Staff" forms addressed to both the Associate Warden and Warden Eagleton's attention, and asserts Eagleton's response was that he would check into the mail problem and access to the courts problem but never gave a proper and adequate response. Defendants did not reply to plaintiff's response in opposition and did not submit an affidavit from defendant Eagleton. Thus, if the District Judge fails to adopt the recommendation for summary judgment based on a lack of actual injury, the undersigned recommends that the motion for summary judgment be denied as to defendant Eagleton on the basis of qualified immunity as there is not sufficient information to make this determination from the present record.

### III.  CONCLUSION

Based on the above reasoning, it is RECOMMENDED that defendants' motion for summary judgment (document # 28) be GRANTED.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

Florence, South Carolina
October 29, 2007

**The parties' attention is directed to the important information on the attached notice.**